FILED

10/06/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0023

DA 20-0023

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 250

MONTANA DIGITAL, LLC,

      Plaintiff and Appellee,

    v.

TRINITY LUTHERAN CHURCH,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-19-165A
Honorable Amy Eddy, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Thane P. Johnson, Preston Rammell, Johnson, Berg & Saxby, PLLP,
Kalispell, Montana

      For Appellee:

          Sean S. Frampton, Connor C. Walker, Frampton Purdy Law Firm,
Whitefish, Montana

Submitted on Briefs:  August 26, 2020

Decided:  October 6, 2020

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Trinity Lutheran Church (Trinity Lutheran) appeals from the judgment entered by the Eleventh Judicial District Court, Flathead County, following the entry of a verdict in favor of Appellee Montana Digital, LLC (Montana Digital). Trinity Lutheran challenges the legal basis of the judgment holding it liable under a theory of unjust enrichment. We reverse.

¶2 Trinity Lutheran raises three issues, stated as follows:

1. *Did the District Court err as a matter of law in determining Trinity Lutheran was unjustly enriched?*

2. *Was there substantial evidence to support a damage award against Trinity Lutheran in the amount of $47,977.29?*

3. *Did the District Court err by dismissing with prejudice Trinity Lutheran's cause of action for negligence?*

Because we reverse on the first issue, we do not reach the second and third issues.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In 2016, Montana Digital contracted with Trinity Lutheran to provide unlimited telephone and internet services to Trinity Lutheran pursuant to the terms of a "Total System Quote" provided by Montana Digital. At the time that the services were obtained, Trinity Lutheran requested that Montana Digital install an access code to control long-distance calling, but Montana Digital advised that an access restriction was unnecessary because long-distance calling was part of the unlimited telephone service. International long-distance calls were not expressly discussed at that time. In its post-trial Findings of Fact, Conclusions of Law and Order (Order), the District Court found that the parties'

2

"contract is silent as to domestic versus international calling, and Montana Digital testified that it no longer draws such a distinction and both domestic and international calling are part of its unlimited telephone service."

¶4 Prior to entering the contract with Montana Digital, Trinity Lutheran received a telephone system as a donation. While newer telephone systems required password protection for voicemails, the system donated to Trinity Lutheran lacked such a security measure, which is different than an access restriction for long-distance calling. The parties initially operated under their contractual arrangement without incident, but in 2018 Trinity Lutheran began to experience calls resulting in immediate hang-ups, as well as its third telephone line being frequently busy. Unaware that these were potential signs of hacking, Trinity Lutheran made no further inquiry and did not report these observations. However, Trinity Lutheran's system had been hacked and was used by a thief over a one-month period between May 25 and June 30 to make international telephone calls to Africa, at a service cost of $47,977.29 for relaying the calls. Within hours of receiving notice of the charge, Montana Digital blocked international calls for Trinity Lutheran's account.

¶5 Inteliquent, a wholesale telecommunications provider, invoiced Montana Digital for the cost of the calls. Skylink Digital, an affiliated company of Montana Digital, was unable to obtain a reduction in the invoice, and paid the full amount to Inteliquent. Montana Digital then paid Skylink Digital for the full amount of the invoice. These third-party communications and arrangements were unknown to Trinity Lutheran prior to Inteliquent receiving payment from Montana Digital through Skylink Digital.

¶6      Trinity Lutheran was unaware of the international calls originating from their telephone system until Montana Digital informed Trinity Lutheran of the charges and invoiced them for the full amount. Trinity Lutheran also then learned of the payment made to Inteliquent but objected to the charges because the international calls were not made by Trinity Lutheran or any affiliated individual or entity, and, thus, it had not received the benefit of the calls. Montana Digital then initiated this action, asserting three claims: (i) breach of contract, (ii) negligence, and (iii) unjust enrichment. Trinity Lutheran counterclaimed in negligence and raised affirmative defenses.

¶7      Prior to trial, Montana Digital withdrew its negligence claim, and the District Court dismissed it from the action. Correspondingly, the District Court ruled that Trinity Lutheran's negligence counterclaim stated only a contributory negligence defense and dismissed it as well. The parties stipulated to the measure of damages as $47,977.29, exclusive of attorney fees and interest. The case proceeded to jury trial on Montana Digital's contract and unjust enrichment claims.

¶8      Following Montana Digital's case-in-chief, Trinity Lutheran moved for a directed verdict on both claims. The District Court directed a verdict on the contract claim in favor of Trinity Lutheran, reasoning the parties' contract was limited to the signed Total System Quote, and not the service agreement and terms and conditions posted on Montana Digital's website. Montana Digital then voluntarily dismissed the contract claim and elected to solely pursue its claim of unjust enrichment. Because unjust enrichment is a claim in equity, the District Court proposed having the jury proceed to verdict and the parties agreeing to be bound thereby. Montana Digital objected. Thus, the District Court

4

submitted the matter to the jury as an advisory jury, which returned a recommendation that Trinity Lutheran had been unjustly enriched. The District Court entered its Order, awarding Montana Digital the sum of $47,977.29, the damages stipulated by the parties.

## STANDARD OF REVIEW

¶9 The standard of review governing proceedings in equity is codified at § 3-2-204(5), MCA, which directs that we review "all questions of fact arising upon the evidence presented in the record . . . as well as questions of law." Section 3-2-204(5), MCA; *Volk v. Goeser*, 2016 MT 61, ¶ 19, 382 Mont. 382, 367 P.3d 378 (citing *Gitto v. Gitto*, 239 Mont. 47, 50, 778 P.2d 906, 908 (1989)). We review the District Court's finding of fact to determine if the court's findings are clearly erroneous, and we review the District Court's conclusions of law for correctness. *Kauffman-Harmon v. Kauffman*, 2001 MT 238, ¶ 11, 307 Mont. 45, 36 P.3d 408 (citing *Hansen v. 75 Ranch Co.*, 1998 MT 77, ¶ 20, 288 Mont. 310, 957 P.2d 32, 36); *see Bitterrooters for Planning, Inc. v. Mont. Dep't of Envtl. Quality*, 2017 MT 222, ¶ 15, 388 Mont. 453, 401 P.3d 712 (the standard of review is "de novo for correctness") (citation omitted). We apply de novo review to mixed questions of law and fact and, thus, while the District Court's factual findings are reviewed for clear error, "'whether those facts satisfy the legal standard is reviewed de novo.'" *Mlekush v. Farmers Ins. Exch.*, 2015 MT 302, ¶ 8, 381 Mont. 292, 358 P.3d 913 (quoting *BNSF Ry. Co. v. Cringle*, 2012 MT 143, ¶ 16, 365 Mont. 304, 281 P.3d 203).

## DISCUSSION

¶10 "Unjust enrichment is an equitable claim for restitution to prevent or remedy inequitable gain by another." *Associated Mgmt. Servs. v. Ruff*, 2018 MT 182, ¶ 64, 392

Mont. 139, 424 P.3d 571 (citing *N. Cheyenne Tribe v. Roman Catholic Church*, 2013 MT 24, ¶¶ 36-39, 368 Mont. 330, 296 P.3d 450); *see also* Restatement (Third) of the Law 3d, *Restitution and Unjust Enrichment*, § 1 (Am. Law Inst. 2011) (one who is unjustly enriched "at the expense of another" is subject to liability in restitution). Courts may construct equitable remedies, particularly restitution or a constructive trust, to prevent the recipient from unjustifiably gaining or retaining something of value, regardless of whether the claimant suffered a corresponding loss. *N. Cheyenne Tribe*, ¶ 38 (under circumstances that call for a court to remedy unjust enrichment, restitution is measured according to the recipient's gain and the claimant "need not necessarily have been deprived of something in order to recover"). Unjust enrichment does not necessarily require demonstrating misconduct or bad faith on behalf of the recipient. *Mt. Water Co. v. Mont. Dep't of Revenue*, 2020 MT 194, ¶ 15, 400 Mont. 484 (citing *Ruff*, ¶ 65; *Volk*, ¶¶ 45 and 50; *N. Cheyenne Tribe*, ¶¶ 37-39; *Lawrence v. Clepper*, 263 Mont. 45, 53, 865 P.2d 1150, 1156 (1993)) ("[t]he creation of a constructive trust need not be limited to the person who obtained property by fraud or deception of another"). To prevail on a claim of unjust enrichment, the aggrieved party must establish that (1) a benefit was conferred upon the recipient by the claimant; (2) the recipient knew about or appreciated the benefit; and (3) the recipient accepted or retained the benefit under circumstances rendering it inequitable for the recipient to do so. *Ruff*, ¶ 64 (citing *N. Cheyenne Tribe*, ¶¶ 33 and 36).

¶11 Unjust enrichment is generally available when an adequate legal remedy does not exist. *See N. Cheyenne Tribe*, ¶ 39 (unjust enrichment "should be limited to situations in which no other remedy exists," citing *Rawlings v. Rawlings*, 2010 UT 52, ¶ 29, 240 P.3d

6

754 ("[u]njust enrichment law developed to remedy injustice when other areas of the law could not") (internal citation omitted)); *see also Mt. Water Co.*, ¶ 17 (unjust enrichment is "often available to ameliorate the harsh effects of law and to provide a remedy where a legal remedy is non-existent or inadequate."). We explained in *Ruff* that "[a] valid contract defines the obligations of the parties as to matters within its scope, displacing to that extent any inquiry into unjust enrichment," and that, "[c]onsequently, unjust enrichment applies in the contract context only when a party renders 'a valuable performance' or confers a benefit upon another under a contract that is invalid, voidable, 'or otherwise ineffective to regulate the parties' obligations.'" *Ruff*, ¶ 67 (quoting Restatement (Third) of the Law 3d, *Restitution and Unjust Enrichment*, § 2(2) cmt. c.) (internal quotations omitted). The Restatement further explains that, if a claimant neglects an opportunity to contract and voluntarily bestows a valuable performance onto another, any claim based on unjust enrichment will be denied. Restatement (Third) of Law 3d, *Restitution and Unjust Enrichment*, 2(2) cmt. d.

¶12    These general principles form an awkward framework for the claim here. *See Mt. Water Co.*, ¶ 17 ("equity is not formless or boundless—it generally applies only in accordance with its own fixed precedents and principles") (internal citation omitted). Generally, a commercial service provider, such as Montana Digital, would enjoy an ample legal remedy in contract to collect a bill that a customer has failed to pay. However, Montana Digital's contract claim was dismissed after its case-in-chief, following which Montana Digital voluntarily withdrew the claim, and has not challenged the District Court's ruling on appeal. Thus, the contract remedy failed, but not as a matter of law;

rather, by the failure of Montana Digital to carry its burden of proof in what should have been a straightforward claim. Such a failure in proving a claim at law makes application of an equitable remedy to backfill the gap within a commercial transaction between provider and customer questionable.

¶13 Even if an unjust enrichment remedy is available here, we cannot conclude the elements of the remedy are satisfied under these circumstances, particularly regarding conferral of a benefit upon Trinity Lutheran.[1] Montana Digital contends the conferred benefit was the wholesale bill paid to Inteliquent for the services provided. However, contractually, that was Montana Digital's and/or Skylink Digital's bill, not Trinity Lutheran's. Trinity Lutheran had no prior dealings with or obligations to Skylink Digital or Inteliquent. Further, the benefit of the international call service was not received by Trinity Lutheran; it made none of the calls. Rather, the benefit was enjoyed by the thief, and Montana Digital did not prove that this occurred as a result of negligence by Trinity Lutheran. Then, even if Inteliquent's paid bill could be considered a benefit to Trinity, Trinity did not "know about or appreciate" this benefit under the second element of unjust enrichment. Although the District Court found that "Trinity Lutheran was aware Montana Digital had paid $47,977.29 to Inteliquent for international calling initiated through Trinity Lutheran's system," Trinity Lutheran clearly did not know about the payment *at the time it was made*, because it was not then aware a wholesale billing had been made to Montana

---

[1] Black's Law Dictionary defines both a "legal benefit" and a "benefit" as "[t]he advantage or privilege something gives; the helpful or useful effect something has[.]" *Benefit, Black's Law Dictionary*, 193 (Bryan Garner, 11th ed. 2019).

8

Digital. Montana Digital made the unilateral decision to pay the bill following discussions among third parties that did not include Trinity Lutheran, and, thus, Trinity Lutheran could not have "accepted" a benefit without being aware of it. An "essential prerequisite to unjust enrichment liability" is acceptance of the benefit by the recipient. 66 Am Jur. 2d Restitution and Implied Contracts § 14 (1973). Finally, in a case of equity involving a commercial transaction, it cannot be overlooked that, had Trinity Lutheran's initial request for a restriction upon access to long distance service been honored by Montana Digital, the theft may well have not occurred, even from Trinity Lutheran's older phone system.

¶14 Consequently, we conclude that, under these circumstances, a claim of unjust enrichment was not established against Trinity Lutheran as a matter of law.

¶15 Reversed and remanded for entry of judgment in favor of Trinity Lutheran.

/S/ JIM RICE

We concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

9